UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
STEVEN ABRAMS and DANTE SCIOSCIA,       :
                                        :   04 CIV. 5518 (DLC)
                       Plaintiffs,      :
                                        :   OPINION and ORDER
           -v-                          :
                                        :
DUANE READE,                            :
                                        :
                       Defendant.       :
------------------------------------X

APPEARANCES:

For Plaintiffs:

David G. Gabor
Gabor & Gabor
400 Garden City Plaza
Suite 406
Garden City, NY 11530



For Defendant:

Craig R. Benson
Stephen A. Fuchs
Grotta, Glassman & Hoffman, P.C.
650 Fifth Ave.
New York, NY 10019

DENISE COTE, District Judge:

Duane Reade has moved for summary judgment on all claims brought against it in this employment discrimination action by Steve Abrams ("Abrams") and Dante Scioscia ("Scioscia"). In January 2004, Duane Reade merged three lines of store supervision into a consolidated District Manager position. Twelve employees who had been District Managers under the old supervisory scheme, including Abrams and Scoiscia, were considered for ten of the new consolidated District Manager positions. Abrams and Scioscia

were the two not offered a position. All the plaintiffs' claims arise from that decision. Abrams and Scioscia both claim that they were discriminated against because of their age. Abrams also alleges discrimination based on his religion. Scioscia brings additional claims of discrimination based on a disability. For the following reasons the motion is denied in part and granted in part.

## Background

The following facts are undisputed or as shown by the plaintiffs except where noted. Duane Reade owns and operates retail drug and consumer convenience stores in and around New York City. In January 2004, Duane Reade instituted a company-wide reorganization or reduction-in-force ("RIF") that was designed to consolidate and eliminate administrative positions in an effort to reduce salary costs. The RIF resulted in the elimination of eighty-eight positions across the company. As part of that effort the system of store supervision was restructured and consolidated. Prior to the reorganization three different positions shared the responsibility of supervising the operations of the stores: Pharmacy Supervisors, Photography Supervisors, and District Managers. Each of the positions was responsible for the supervision of several stores in a given area of the City. District Mangers were in charge of the front end operations of the stores, including cashiers, the sales and merchandise floor, and general store maintenance.

2

Through the reorganization, the positions of Pharmacy Supervisor and Photography Supervisor were eliminated, and a consolidated District Manger position was given responsibility for all operations. In choosing its new consolidated District Managers, Duane Reade considered all its employees in the three separate lines of supervision, but because experience working with pharmacies was considered a particularly important qualification for the new position, the Pharmacy Supervisors were given top priority. District Managers were given second priority and Photography Supervisors were given third priority. Twenty-nine employees were considered for the fourteen consolidated District Manager positions. Four Pharmacy Supervisors were able and willing to assume the consolidated position. As a result, ten slots were left for the fourteen District Managers and eight Photography Supervisors.

At the time of the reorganization Abrams and Scioscia were the two oldest District Managers. Abrams had worked for Duane Reade as a District Manager for over five years. He had previously worked at RockBottom stores for twenty-four years, which Duane Reade acquired in August 1998. Abrams is Jewish and was fifty-seven years old in January 2004. Scioscia was hired by Duane Reade in July 2000 as a District Manager. He was sixty-two years old in January 2004. Scioscia suffers from kidney stones and was scheduled to miss two days of work for a related medical procedure in January 2004. The decision not to offer him a consolidated District Manager position came before his scheduled

procedure.

The District Managers were supervised by two Directors of Operations, Mike DeFazio ("DeFazio") and Bill Keenan ("Keenan"), each of whom was responsible for supervising half of the District Managers. DeFazio and Keenan were in turn supervised by Thomas Ordemann ("Ordemann"), the Vice-President of Operations. In order to select the District Managers to fill the ten available slots Ordemann asserts that he instructed the two Directors of Operations to rank the District Managers under their supervision. The rankings were to be based entirely on their own business judgment. Ordemann asserts that he also made his own set of rankings, also based solely on his business judgment, and then compared his rankings with those made by the DeFazio and Keenan before making his final judgment. Despite emphasizing that the rankings of the District Managers were the determinative factor in its decision-making process, the defendant has not produced any documentation of those rankings or this decision-making process.

Ordemann asserts that Abrams was ranked last by both Ordemann and by his direct supervisor DeFazio. Ordemann attributes this ranking to repeated issues regarding the conditions in his stores. Ordemann alleges that Scioscia was found to be less suitable than others for the new position by his superivisor Keenan. He attributes the low ranking, at least in part, to the fact that Scioscia's performance was only adequate despite managing less demanding stores with low sales volume.

4

Ordemann claims that it was based on the information from the ranking process that he decided not to offer the plaintiffs positions as consolidated District Managers.

The plaintiffs were informed of the decision not to offer them consolidated District Manager positions on January 13, 2004. Abrams was offered and accepted a position as a Store Manager with the same pay and benefits as he had enjoyed while a District Manager. It is undisputed that Scioscia's employment with Duane Reade ended on January 13, 2004. The parties disagree over whether Scioscia was also offered a Store Manager position. Scioscia contends that Ordemann would not discuss a possible position as a Store Manager with him but instead sent him to see Duane Reade's Vice-President for Human Relations, Jim Rizzo ("Rizzo"). Scioscia alleges that Rizzo promised to contact him later with the details of the Store Manager position but never followed through on that promise.

The plaintiffs filed their complaint on July 15, 2004. Both Abrams and Scioscia allege that the decision not to offer them one of the new positions was motivated by their age in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 et seq., the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 et seq., and the New York City Human Rights Law ("NYCHRL"), New York City Admin. Code § 8-101 et seq. Abrams also alleges that he was discriminated against because of his religion in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., the

5

NYSHRL and the NYCHRL. Scioscia brings additional claims for discrimination based on a disability under the American with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 et seq., the NYSHRL and the NYCHRL. Finally, Scioscia brings a claim under the Family Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 et seq. Following the close of discovery, the defendant moved for summary judgment on August 5, 2005.

## Discussion

Summary judgment may not be granted unless the submissions of the parties taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of demonstrating the absence of a material factual question, and in making this determination the court must view all facts in the light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Summary judgment should only be granted when "no reasonable trier of fact could find in favor of the non-moving party." James v. New York Racing Ass'n, 233 F.3d 149, 152 (2d Cir. 2000)(citation omitted). When the moving party has asserted facts showing that the non-movant's claims cannot be sustained, the opposing party must "set forth specific facts showing that there is a genuine issue for trial," and cannot rest on "mere allegations or denials" of the movant's pleadings. Fed.

6

R. Civ. P. 56(e); accord Burt Rigid Box, Inc. v. Travelers Property Cas. Corp., 302 F.3d 83, 91 (2d Cir. 2002).

A. Age Dicrimintion

The ADEA makes it "unlawful for an employer...to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Courts analyzing discrimination claims under the ADEA apply the three step burden-shifting framework established by McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1972). See Woodman v. WWOR-TV, Inc., 411 F.3d 69, 76 (2d Cir. 2005). The plaintiffs also bring age discrimination claims under state and city law, which are subjected to the same burden-shifting analysis as claims under the ADEA. Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 466 (2d Cir. 2001).

To sustain their claim of age discrimination the plaintiffs must first establish a prima facie case of age discrimination by showing that (1) they were within the protected class; (2) they were qualified for the position; (3) they suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination. Terry v. Ashcroft, 336 F.3d 128, 137-138 (2d Cir. 2003). An adverse employment action is one which is "more disruptive than a mere inconvenience or an alteration of job responsibilites." Id. at 138 (citation omitted). "Examples of

7

materially adverse changes include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." Id. (citation omitted); see De La Cruz v. New York City Human Resources Admin. Dep't. of Soc. Servs., 82 F.3d 16, 21 (2d Cir. 1996) (holding transfer to less elite division of Department of Social Services satisfied the third prong of a prima facie case under McDonnell Douglas in a Title VII claim). The plaintiff's prima facie burden has been characterized as "minimal" and "de minimis." Woodman, 411 F.3d at 76 (citation omitted). Duane Reade concedes that the plaintiffs satisfy the first three elements of a prima facie case.

Once a plaintiff establishes a prima facie case there is a presumption of unlawful discrimination. Id. The burden then shifts to the employer to "offer a legitimate, non-discriminatory rationale for its actions." Terry, 336 F.3d at 138. If the defendant is able to articulate such a rationale "the presumption of discrimination drops out and the plaintiff must prove the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." Woodman, 411 F.3d at 76 (citation omitted).

Showing that an employer treated similarly situated employees differently is a "common and especially effective method of establishing a prima facie case of discrimination."

McGuiness v. Lincoln Hall, 263 F.3d 49, 53 (2d Cir. 2001) (citation omitted). Plaintiffs have shown that they were treated differently than younger District Managers who were similarly situated to the plaintiffs in all material respects. See id. at 54. That evidence is enough to allow a reasonable fact-finder to conclude that the plaintiffs satisfied their initial burden under McDonnell Douglas.

Duane Reade argues that its decision not to offer the plaintiffs positions as consolidated District Managers was a legitimate exercise of its business judgment. It points to the poor ranking of Abrams and Scoiscia in the evaluation of the candidates for the position by Ordemann, Keenan and DeFazio as a legitimate, non-discriminatory rationale for its decision. This is sufficient to shift the burden to the plaintiffs to show intentional discrimination.

The plaintiffs have presented sufficient evidence to allow a reasonable inference that Duane Reade's rationale was a pretext for discrimination. To begin with, the defendant has not produced any written evidence of the evaluations that it asserts drove its decision to reject the plaintiffs. The plaintiffs also emphasize the difference in age between the District Managers that Ordemann hired or promoted during the two year period that surrounded the January 2004 reorganization and those that he has fired or demoted as evidence of Ordemann's discriminatory treatment of older employees. Assuming the ranking process was diligently executed, it was still completely subjective, as the

9

defendant concedes. The plaintiffs present evidence which could be read to suggest both an ageist bias in one of the chief decision-makers and a general effort by him to eliminate older District Managers. Taken in the light most favorable to the plaintiffs, the pattern and method of employment decisions by Ordemann raise a material issue of fact concerning the plaintiffs' contention that the defendant's stated reasons for not offering Abrams and Scioscia consolidated District Manager positions were pretextual.

Duane Reade argues that the plaintiffs look at an overly broad period of time or at an overly narrow subset of Duane Reade's RIF. These arguments go to the probative value of the evidence presented by the plaintiffs and are properly made to a jury. The defendant's motion for summary judgment on the plaintiffs' three claims for age discrimination is denied.

B. Religious Discrimination

Plaintiff Abrams' claims of religious discrimination under Title VII, the NYSHRL and the NYCHRL are analyzed under the same burden-shifting framework utilized in analyzing the plaintiffs' age discrimination claims. Mandell v. County of Suffolk, 316 F.3d 368, 377 (2d Cir. 2003). The defendant has again conceded the first three elements of the Abrams' prima facie case. Abrams can establish a question of material fact on the fourth element of his claim by pointing to the decision not make him a consolidated District Manager while offering the position to

similarly situated District Managers who were not Jewish. McGuiness, 263 F.3d at 53.

Abrams presents several pieces of evidence that raise material questions of fact on the issue of pretext. He points to the treatment of another Jewish District Manager, Paul Shapiro ("Shapiro") who was fired in November 2002. Shapiro alleges that both he and Marty Tachman ("Tachman"), a third Jewish District Manager, were targeted by Ordemann.[1] In addition, the plaintiffs point to what they characterize as an anti-Semitic email sent by Ordemann on February 13, 2003. The inferences to be drawn from the adverse action taken against Shapiro and the February 13 email are questions of fact and must be resolved at trial.

The fact that Duane Reade offered a consolidated position to Robert Schwartz ("Schwartz"), Gary Melnick ("Melnick") and Jeremy Stein ("Stein"), all of whom are Jewish, does not entitle the defendant to judgment as a matter of law. Schwartz and Melnick had pharmacy experience, a qualification the defendant deemed crucial for the consolidated District Manager position, and Stein is the son of a Duane Reade Vice-President. The issue of whether the defendant's treatment of Schwartz, Melnick and Stein negates the inference of discrimination created by the plaintiffs' other evidence is a factual question to be determined by a jury. The defendant's motion for summary judgment on Abrams' claims of

---

[1] The plaintiffs also note the demotion of Marty Tachman to Store Manager in January 2003 as further evidence that gives rise to an inference of discrimination. In his deposition testimony Tachman stated that he does not believe that religion played a role in his demotion.

11

discrimination based on religion is denied.

C.  Disability Discrimination and the FMLA

Scioscia claims discrimination based on a disability under the ADA. He also raises similar claims under the NYSHRL and the NYCHRL, and alleges that the termination of his employment immediately prior to his scheduled medical procedure violated his rights under the FMLA. The ADA prohibits discrimination against a "qualified individual with a disability because of the disability" in the "terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). In order to sustain his claim, Scioscia must prove that: (1) Duane Reade is covered by the ADA; (2) he suffers from or is regarded as suffering from a disability within the meaning of the ADA; (3) he was qualified to perform the essential functions of the job, with or without reasonable accommodation; and (4) he suffered an adverse employment action because of his disability or perceived disability. Capobianco v. City of New York, 422 F.3d 47, 56 (2d Cir. 2005). Because, as a matter of law, Scioscia cannot satisfy the second element required under the ADA, summary judgment is granted on this claim.

The ADA defines a disability as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). The existence of a disability must be

determined on a "case-by-case" basis. Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 198 (2002); Capobianco, 422 F.3d at 56. Not every impairment is a disability for the purposes of the ADA; the impairment must both limit a major life activity and also be substantial. Id. In order to qualify as having a disability under Section 12102(2)(C) the employer must do more than perceive the employee as somehow disabled; the "employer must regard the employee as disabled within the meaning of the ADA." Id. at 57 (citation omitted).

Scioscia does not suggest that his kidney stones substantially limited any major life activity. While Duane Reade was aware of Scioscia's kidney stones, Scioscia has not introduced any evidence that his kidney stones were perceived by his employer to limit any major life activity. Because Scioscia has failed to establish an issue of material fact on one of the necessary elements under the ADA, summary judgment is granted on that claim.

The definitions of disability under the NYSHRL and NYCHRL are "broader than the ADA definition." Giordano v. City of New York, 274 F.3d 740, 753 (2d Cir. 2001). Neither the NYSHRL nor the NYCHRL definition requires that the plaintiff show that the disability substantially limits a major life activity. Id. at 754. The conclusion that summary judgment is proper for Scioscia's claim under the ADA does not resolve whether summary judgment may be granted on his state law and city law claims.

Even if Scioscia's kidney stones qualify as a disability

under the NYSHRL and the NYCHRL, he cannot sustain his claims under the McDonnell Douglas burden-shifting analysis.[2] Scioscia's termination may give rise to a prima facie case based on disparate treatment and the inability of the defendant to produce any documentation of their rankings may bring into question the defendant's rationale for its decision, but surviving summary judgment on those two elements is not necessarily enough. James, 233 F.3d at 156-157. Scoiscia must still present evidence that "reasonably supports an inference of the facts plaintiff must prove - particularly discrimination." Id. at 157.

Scioscia has not presented any evidence to support such an inference. His evidence only establishes that he had kidney stones and that Ordemann knew of his condition. While that evidence may be enough to meet the de minimus standard required to support a prima facie case it does not establish evidence of discriminatory conduct by the defendant that raises a triable issue of fact. Summary judgment is granted on Scioscia's disability claims under the NYSHRL and NYCHRL.

Scioscia also fails to allege sufficient facts to survive

---

[2] Claims under the NYCHRL and the NYSHRL are analyzed under the McDonnell Douglas burden-shifting analysis. See Reeves v. Johnson Controls World Services, Inc., 140 F.3d 144, 156 n.9 (2d Cir. 1998) (noting that NYSHRL claims are analyzed using McDonnell Douglas buden-shifting); Mohamed v. Marriot Intern., Inc., 905 F.Supp. 141, 156-157 (S.D.N.Y. 1995) (suggesting that claims under NYSHRL and NYCHRL should analyzed in same manner as claims under ADA); Pace Univ. v. New York City Comm'n on Human Rights, 611 N.Y.S.2d 835 (App. Div. 1st Dept. 1994) rev'd on other grounds, 85 N.Y.2d 125 (1995) (noting that NYCHRL, NYSHRL and federal civil rights laws are "virtually identical").

summary judgment on his claim under the FMLA. The FMLA requires covered employers to grant employees who have worked for twelve months up to twelve weeks' leave during any twelve month period "for, inter alia, 'a serious health condition that makes the employee unable to perform the functions of the position of such employee." Hale v. Mann, 219 F.3d 61, 68 (2d Cir. 2000) (quoting 29 U.S.C. § 2612(a)(1)(D)). The FMLA provides protection in the event that an employer interferes with an attempt by an employee to exercise their rights under the statute: "it shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." 29 U.S.C. § 2615(a)(1) (emphasis supplied). Scoiscia claims that his employment was terminated because of his attempt to exercise his rights under the FMLA, thereby violating Section 2615(a)(1).

The Second Circuit has not yet determined whether claims brought under Section 2615(a)(1) are governed by McDonnell Douglas burden-shifting. Potenza v. City of New York, 365 F. 3d 165, 167 (2d Cir. 2004). Even if Scoiscia does not have to prove discriminatory intent under McDonnell Douglas, he must at least show that the decision not to offer him a consolidated District Manager position was "motivated by" his intention to exercise his rights under the FMLA. Mann v. Mass. Correa Electric, J.V., 00 Civ. 3559 (DLC), 2002 WL 88915, at *7 (S.D.N.Y. Jan. 23, 2002); see also Bachelder v. American West Airlines, Inc., 259 F.3d 1112, 1125 (9th Cir. 2001).

Scioscia has not provided any evidence to suggest that the defendant was motivated in its decision-making by Scioscia's pending leave. Scoiscia relies solely on the fact that the defendant knew of his condition. Scioscia's conclusory allegation of a connection between the two events is not enough to establish an issue of material fact for trial, and indeed, he has not opposed the defendant's motion for summary judgment on the FMLA claim.

## Conclusion

For the reasons discussed above, Duane Reade's motion for summary judgment is granted on plaintiff Scioscia's claims for discrimination based on a disability under the ADA, the NYSHRL and the NYCHRL. Summary judgment is also granted on plaintiff Scioscia's claim under the FMLA. Summary judgment is denied with respect to all other claims.

Dated: New York, New York
November 21, 2005

_____
DENISE COTE
United States District Judge